IN THE UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF OHIO

EASTERN DIVISON

| | | |
|---|---|---|
| DLHBOWLES, INC., | ) | CASE NO. 5:21-CV-00170-DAR |
| | ) | |
| Plaintiff, | ) | JUDGE DAVID A. RUIZ |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| JIANGSU RIYING ELECTRONICS CO., LTD., | ) | CARMEN E. HENDERSON |
| | ) | **MEMORANDUM OPINION AND ORDER** |
| | ) | |
| Defendant, | | |

**I.    Introduction**

This is before the Court on Plaintiff's Notice of Discovery Dispute. (ECF No. 51). The case was referred to the undersigned for resolution of discovery disputes, general pretrial supervision, and resolution of non-dispositive motions. (ECF Nos. 52, 73). After an initial telephone conference, the undersigned ordered the parties to simultaneously brief the issue. (ECF No. 69). The parties provided initial briefs and responses. (ECF Nos. 78, 79, 84, 85). After receiving the briefs, the undersigned held another telephone conference and took the matter under advisement. The undersigned concludes that Plaintiff has not demonstrated entitlement to discovery of unaccused products. Thus, Plaintiff's request to compel this discovery is DENIED and Defendant's objection is SUSTAINED.

**II.    Background**

This is a patent infringement case. Plaintiff alleges that Defendant's "ball mount spray nozzle device" and "fluidic nozzle device"—two washer nozzles—infringe on two of Plaintiff's patents. (ECF No. 58). Plaintiff's claim charts define the types of products that infringe the patents as: (1) "manually adjustable fluidic spray device" comprising a certain fluidic circuit base (ECF No. 58-2 at 1) and (2) "fluidic insert that receives fluid under pressure from a fluid inlet tube and generates a specified spatial distribution of the fluid exiting said insert." (ECF No. 58-4 at 1). As the Court understands it, Plaintiff's patents involve two devices that are found within a fluidic insert. The fluidic insert is found inside of a fluidic spray device. Fluidic spray devices are used on automobiles—as relevant to this lawsuit—to release fluid onto an automobile's windshields.

This dispute arose after Defendant objected to multiple requests that Defendant provide information on "all Fluidic Spray Technology [—eventually narrowed to "fluidic inserts"—Defendant] manufactured, offered for sale, sold, distributed, used, imported, or possessed since March 21, 2006." (ECF No. 51-2 at 5–6). Specifically, Plaintiff requests a list, photographs, and samples of all of Defendant's fluidic inserts—to include fluidic inserts not currently accused of patent infringement. Defendant argues that these requests are "overly broad, unduly burdensome, and seek[] information that is not relevant to any party's claim or defense in this case and is not proportionate to the needs of the case." (ECF No. 51-2 at 5–6). Plaintiff concedes that it is not sure that this discovery will show any further infringements but believes it is entitled to discovery on products that are "reasonably similar" to the ones allegedly infringing its patents.

**III.     Law and Analysis**

Parties can obtain discovery of unidentified and unaccused products if two threshold requirements are satisfied. *Tesseron, Ltd. v. R.R. Donnelley & Sons Co.*, No. 1:06 CV 2909, 2007 WL 2034286, at *3 (N.D. Ohio July 10, 2007). First, the party seeking the discovery must "identify

with requisite specificity the type of product" at issue. *Id.* Second, the requesting party "must also identify with specificity the component, characteristic, or element of the product" that the party believes will render the product infringing. *Id.* Whether the requesting party has demonstrated the proper level of specificity is not always clear. "If the requesting party can articulate, in a focused, particularized manner, the characteristics or components that the unaccused products must have in order to suggest that they may infringe the patents-in-suit, the discovery-at-issue is more likely to be seen as relevant—as 'relating to an issue . . . necessarily in the case.'" *Invesas Corp. v. Renesas Elecs. Corp.*, 287 F.R.D. 273, 279 (D. Del. 2012) (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1326 (Fed. Cir. 1990)). Some courts describe this as "a showing that the requested discovery relates to products 'reasonably similar' to those that have been specifically accused of infringement." *Id.* (citations omitted). If, however, "the proffered basis for the discovery amounts to a broader, more generalized argument as to how the unaccused products may be similar to the accused products, the discovery request is more likely to be viewed as the product of 'suspicion or speculation'—one less likely to lead to relevant evidence and more likely to be denied." *Id.*

Plaintiff argues that it is entitled to discovery of unaccused products because: 1) its infringement contentions identify its infringement theory, putting Defendant on notice of the Plaintiff's specific theories and the types of products Plaintiff is requesting, and 2) Plaintiff's discovery requests are "reasonably similar" to the products already accused of infringement. Defendant argues that Plaintiff has not met its burden to obtain the requested discovery. Defendant argues that Plaintiff is requesting discovery based on "generalized suspicions about a competitor's entire product line, and its stated desire to satisfy its curiosity about the 'universe' of a competitor's business to see if it can find anything else to support potential future infringement claims against un-accused products." (ECF No. 79 at 2).

The Court concludes that Plaintiff has not made the necessary showing to obtain the requested discovery. A review of relevant case law helps to demonstrate this. For example, in *Tesseron, Ltd.*, the court concluded that the plaintiff was not entitled to requested discovery of unaccused products. 2007 WL 2034286, at *5. The plaintiff alleged that two of defendant's printing systems infringed certain patents related to variable data printing systems and services. *Id.* at *1. A dispute arose after the plaintiff sought discovery of "all the systems that [defendant] is using and has previously used" on the "assumption" that the defendant could not "generate its end product without using an infringing system." *Id.* at * 1–2. The court noted that plaintiff's request encompassed "a broad spectrum of technology and . . . include[d] many systems that [could] not conceivably infringe on any of [plaintiff's] patents." *Id.* at *5. Thus, the court concluded that plaintiff needed to "narrow the scope of the systems to be targeted" before it would order discovery on unaccused products. *Id.*

On the other hand, in *Honeywell Int'l Inc. v. Acer Am. Corp.*—a case relied on by Plaintiff—the court allowed the plaintiff to obtain discovery on unaccused products. 655 F. Supp. 2d 650, 657 (E.D. Tex. 2009). There, the plaintiff alleged that several of the defendant's Driver Integrated Circuits ("Driver ICs") infringed its patented LCD screen. *Id.* at 651–52. The plaintiff's patent covered some LCD systems that employed dot and/or column inversion schemes. *Id.* at 652. During discovery, the plaintiff requested "a list of all [defendant's] products which perform dot and/or column inversion and the model numbers of the Driver ICs incorporated therein." *Id.* The court allowed this discovery because the plaintiff gave the defendant notice of a specific theory of infringement and demonstrated that the products it sought discovery of "likely operate[d] in a manner reasonably similar to the infringement theory contained in" its contentions. *Id.* at 657. To demonstrate that the requested discovery was "reasonably similar", the plaintiff described, element

by element, how two accused Driver ICs were "structurally identical and operate[d] in a manner consistent with" plaintiff's infringement theory. *Id.* Based on those similarities, the Court concluded that the Driver ICs in the defendant's dot and/or column inversion products likely operated in a reasonably similar manner. *Id.* Thus, Plaintiff was entitled to discovery regarding defendant's other dot and/or column inversion products. *Id.*

Here, Plaintiff has not articulated in a "focused, particularized manner," the components that the unaccused products must have to suggest they may infringe the patents-in-suit. Similar to the request in *Tesseron*, Plaintiff's request covers many devices that may not infringe its patent at all. Plaintiff requests discovery on all Defendant's "fluidic inserts" made for automobiles that somehow end up in the United States. Fluidic inserts are found inside of a fluidic spray device—though it is possible for a fluidic spray device to be made without a fluidic insert—which is found on virtually all automobiles. Moreover, the fluidic insert is not even what infringes Plaintiff's patent. Plaintiff's patented device is found inside a fluidic insert. By Plaintiff's own admission, there are plenty of fluidic inserts that do not infringe its patents. Plaintiff's request, therefore, covers a broad spectrum of devices that include many products that do not infringe its patent.

Despite arguments to the contrary, unlike the plaintiff in *Honeywell*, Plaintiff has not demonstrated that the products it requests are reasonably similar to its infringement theory. In fact, fluidic inserts are not reasonably similar to Plaintiff's infringement theories because there are plenty of fluidic inserts that do not infringe Plaintiff's patents and, thus, are not similar to Plaintiff's infringement contentions. This is a circumstance where "the proffered basis for the discovery amounts to a broader, more generalized argument as to how the unaccused products may be similar to the accused product." *Invesas Corp.*, 287 F.R.D. at 279 (citations omitted). In such a circumstance, "the discovery request is more likely to be viewed as the product of 'suspicion or

speculation.'" *Id.* The only reason Plaintiff believes Defendant's unaccused products potentially infringe its patents is that Defendant has already infringed Plaintiff's patents. Thus, Plaintiff's request is based on the "assumption" that because some of Defendant's devices infringe its patents, there must be others. Plaintiff has not proffered more than a suspicion that the requested products infringe its patents. The discovery is, therefore, not relevant. *See Datatrak Int'l, Inc. v. Medidata Sols., Inc.*, No. 1:11 CV 458, 2015 WL 12734894, *3 (N.D. Ohio July 10, 2015) (denying request for unaccused product discovery where the plaintiff failed to give a "specific demonstration that the products [were] reasonably similar"). "[D]iscovery can be used 'to assist a party to prove a claim it reasonably believes to be viable *without discovery*, not to find out if it has any basis for a claim.' Just because 'the discovery might uncover evidence showing that a plaintiff has a legitimate claim does not justify the discovery request.'" *LifeNet Health v. LifeCell Corp.*, No. 2:13cv486, 2014 WL 4162113, at *6 (E.D. Va. Aug. 19, 2014) (citing *Micro Motion, Inc. v. Kane Steel Co.*, 894 F.2d 1318, 1327 (Fed. Cir. 1990)).

The Court recognizes the difficult position Plaintiff is in. Plaintiff cannot obtain this information and, thus, determine whether Defendant's products infringe its patents in any other realistic way. However, the fact that Plaintiff has no other way to obtain discovery of infringement is not a reason to compel discovery. *See Invesas Corp.*, 287 F.R.D. at 285–86 (denying discovery on unaccused products despite the fact that the plaintiff could not obtain the discovery another way); *Tesseron*, 2007 WL 2034286, at * 5 (same). "[A] plaintiff is not entitled to accuse certain products of infringement, and then ask for discovery on every other product on a mere suspicion that other products might infringe as well." *1 Communique Lab., Inc. v. Citrix Sys.*, No. 1:06CV253, 2014 WL 2506250, at *4 n.6 (N.D. Ohio June 3, 2014). Additionally, the Court notes that it is possible for Plaintiff to obtain some unaccused discovery. In this instance, the parties

were unable to tailor Plaintiff's discovery request in an acceptable way. Should Plaintiff redefine the discovery request to be consistent with this order, the Court may allow Plaintiff to obtain discovery at that time. As of now, the Court will not order Defendant to comply with this discovery request.

### IV. Conclusion

For the foregoing reasons, the Court DENIES Plaintiff's request to compel discovery and SUSTAINS Defendant's objection.

**IT IS SO ORDERED.**

Dated: March 7, 2022

s/ *Carmen E. Henderson*
CARMEN E. HENDERSON
U.S. MAGISTRATE JUDGE